IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID HAWKINS, as Personal Representative of the Estate of PEGGY ROBINSON, </br></br>    Plaintiff, </br></br>v. </br></br>CUNA MUTUAL GROUP d/b/a CMFG LIFE INSURANCE COMPANY, </br></br>    Defendant. | Case No. CIV-22-536-SLP |

**O R D E R**

Before the Court is Defendant CMFG Life Insurance Company's Motion for Summary Judgment and Brief in Support [Doc. No. 42]. The matter is fully briefed and at issue. *See* Pl.'s Resp. [Doc. No. 57]; Def.'s Reply [Doc. No. 58].[1] For the reasons that follow, Defendant's Motion is GRANTED.

**I.   Introduction**

Plaintiff brings this action as personal representative of the Estate of Peggy Robinson. Ms. Robinson died in October 2016. At the time of her death, Ms. Robinson had a certificate of insurance with Defendant. The parties dispute whether Ms. Robinson's death is a covered occurrence under the certificate. The parties further dispute whether coverage is excluded by the certificate.

Plaintiff asserts claims against Defendant for breach of contract and breach of the implied duty of good faith and fair dealing. *See* Compl. [Doc. No. 1]. Defendant moves

---

[1] Citations to the parties' briefing submissions reference the Court's ECF pagination.

for summary judgment as to both claims and contends the undisputed factual record shows it is entitled to judgment as a matter of law.

## II.     Governing Standard

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Wright v. Portercare Adventist Health Sys.*, 52 F.4th 1243, 1254 (10th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). "In analyzing the propriety of a grant of summary judgment, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *Id*. (cleaned up). To defeat summary judgment, the nonmovant must cite sufficient evidence to show there is a question of material fact to be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

A party asserting a material fact is either disputed, or undisputed, must support that assertion by: (1) citing to "depositions, documents . . . affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" in the record; or (2) "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). In reviewing the parties' submissions, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

III.    **Undisputed Material Facts**

On March 1, 2013, Defendant issued an Accidental Death and Dismemberment Certificate of Insurance, No. G5764903 (the Certificate) [Doc. No. 42-1], to Peggy Robinson.  The Certificate provides benefits "for accidental death or accidental dismemberment and covered injuries only." *Id*. at 1.

The Certificate defines "accidental death" as "[d]eath resulting from an *injury*, and occurring within 1 year of the date of the accident causing the *injury*." *Id*. at 2.  The Certificate defines "injury" as "[b]odily damage or harm which: (a) is caused directly by an *accident* and independently of all other causes; (b) is effected solely through external means; and (c) occurs while a *covered person's* insurance is in force under *your* certificate." *Id*.  And, the Certificate defines "accident" as "[a]n occurrence which is unexpected or unforeseen, either as to its cause or as to its result." *Id*.  The Certificate excludes from coverage "any loss or covered *injury*" that "is due to any . . . complication resulting from medical treatment, [or] surgery." *Id*. at 5.

On September 29, 2016, Ms. Robinson was admitted into Stillwater Medical Center in Stillwater, Oklahoma.  Upon her arrival, Ms. Robinson was unresponsive and resuscitated in the emergency room.  Ms. Robinson was intubated, transferred to the intensive care unit and placed on a ventilator for treatment.  After her extubation, medical providers recommended a CAT scan of Ms. Robinson's abdomen.  But the care team decided she required intubation before this procedure.

On October 4, 2016, a feeding tube was placed in Ms. Robinson's nostril.  She began bleeding from her nostril and when the tube was pulled out, there was some blood

suctioned from the nostril. Her oxygen saturation decreased to 70%. The parties do not dispute that Ms. Robinson experienced respiratory failure, but the parties dispute the cause of the respiratory failure. Defendant contends the respiratory failure was due to acute respiratory stress syndrome. Plaintiff contends the respiratory failure was due to excessive bleeding in her airway caused by the improper placement of the feeding tube down her nostril.

Ms. Robinson was unresponsive for forty-three minutes in Code Blue while advanced cardiovascular life support continued. Ms. Robinson's family agreed to end resuscitation efforts and Ms. Robinson died on October 4, 2016. Plaintiff is the personal representative of Ms. Robinson's estate.

Ms. Robinson's death certificate identifies the "immediate cause of death" as "respiratory failure" and identifies "sequential conditions" leading to the immediate cause of death as "adult respiratory distress syndrome" and "aspiration pneumonia." *See* Certificate of Death [Doc. No. 42-3].[2] It then lists the "underlying cause of death," i.e. the "injury that initiated the events resulting in death" as "gastroenteritis with vomiting." *Id*. Further, the death certificate lists "other significant conditions contributing to death" as "septic shock, acute renal failure, atherosclerotic coronary artery disease and

---

[2] The cause-of-death listings are identified in the section of the death certificate headed "CAUSE OF DEATH" which directs the medical doctor completing the form to "[e]nter the chain of events – diseases, injuries or complications – that directly caused the death." *See id*.

epistaxis." *Id*. Finally, the death certificate identifies the *manner* of death as "natural" not "accidental." *Id*.[3]

## IV. Analysis

In this diversity action, the Court applies the substantive law of Oklahoma, the forum state. *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1201 (10th Cir. 2022). The Court first addresses Plaintiff's breach of contract claim. Because the Court finds, on the undisputed factual record, that coverage does not exist under the Certificate, the Court further finds Plaintiff's claim for breach of the duty of good faith and fair dealing necessarily fails as a matter of law.[4]

### A. Breach of Contract

"Under Oklahoma law, an insurance policy is a contract and is interpreted accordingly." *Automax Hundai South, L.L.C. v. Zurich Am. Ins. Co*., 720 F.3d 798, 804 (10th Cir. 2013). "The elements of a breach of contract action are: (1) formation of a contract; (2) breach of the contract; and (3) damages as a result of that breach." *Morgan v. State Farm Mut. Auto. Ins. Co*., 488 P.3d 743, 748 (Okla. 2021).

---

[3] Defendant incorrectly states that the death certificate identified the *cause* of death as "natural." *See* Def.'s Mot., Statement of Undisputed Material Facts (SUMF), Section II(B), ¶ 22. But the death certificate clearly states that the *manner* of death was natural. *See* Doc. No. 42-3. The two terms are not synonymous. *See, e.g., Davis v. Fed. Ins. Co*., 382 F. Supp.3d 1189, 1197 (W.D. Okla. 2019) (discussing distinction and noting that "manner-of-death determinations are not dispositive in the context of policies that define 'accident'" (citing cases)).

[4] For this reason, the Court need not address the additional facts Defendant submits in support of its Motion regarding the "Claim for Proceeds." *See* Def.'s Mot., SUMF, Section II(C), ¶¶ 24-40. Those additional facts pertain to Plaintiff's claim for breach of the duty of good faith and fair dealing.

Where a dispute exists as to the language of an insurance policy, the court must first determine, as a matter of law, whether the policy language is ambiguous. *MTI, Inc. v. Emp'rs Ins. Co. of Wausau*, 913 F.3d 1245, 1249 (10th Cir. 2019) (citing *Cranfill v. Aetna Life Ins. Co*., 49 P.3d 703, 706 (Okla. 2002)).  An ambiguity exists only where the policy language is "susceptible to two interpretations, considered from the standpoint of a reasonably prudent layperson." *Id*.  If the language is not ambiguous, the court accepts the language in its plain, ordinary and popular sense. *Id*.

The parties dispute centers on the second element of Plaintiff's contract claim, i.e., breach of the contract.  As stated, Defendant argues no breach has occurred because coverage does not exist under the Certificate.

### 1.      Whether Ms. Robinson's Death was a Covered Injury

Defendant first argues coverage does not exist because Ms. Robinson's death does not constitute an "injury" as defined in the Certificate.  Defendant contends the death did not result from an "accident", i.e., "an unforeseen and unanticipated event." Def.'s Mot. at 13.  Plaintiff responds that Ms. Robinson died as a result of medical malpractice and that medical malpractice is an accident as defined by the Certificate.

In making their respective arguments, neither party contends the Certificate language is ambiguous.  And, under Oklahoma law, "the words, 'accident' and 'accidental' have never acquired any technical meaning in law, and when used in an insurance contract, they are to be construed and considered according to common speech and common usage of people generally." *Automax*, 720 F.3d at 804 (quoting *U.S. Fid. & Guar. Co., v. Briscoe,* 239 P.2d 754, 756 (Okla. 1951)).  Thus, the Court finds as a matter

of law the terms of the Certificate with respect to whether Ms. Robinson's death was accidental are not ambiguous. *See id.* ("Determining whether an insurance contract is ambiguous and interpreting the terms of a contract are tasks for the court."). And the Court accepts the Certificate's language in its plain, ordinary and popular sense.

As set forth, the Certificate defines an accident as "[a]n occurrence which is unexpected or unforeseen, either as to its cause or as to its result." Certificate [Doc. No. 42-1] at 2. The Oklahoma Supreme Court has held that "[i]n the context of life and accident insurance," "foreseeability" has a "specific meaning" and is not to be analyzed under tort principles. *Cranfill*, 49 P.3d at 706-07. "It is only when the consequences of the act are so natural and probable as to be expected by any reasonable person that the result can be said to be so foreseeable as not to be accidental." *Id*. at 707.

In *Cranfill*, the insured died as a consequence of driving while intoxicated. The court found the insured's death was accidental. *Id*. at 707-08. The court reasoned that "[t]he mere fact that an insured's death may have resulted from his or her own negligence, or even gross negligence, does not prevent the death from being accidental under the plain meaning of the word accident." *Id*. at 707.

Defendant cites *Cranfill*, but argues that "'a voluntary action resulting in *foreseeable* injury is not an accident'" under Oklahoma law. Def.'s Mot. at 14 (quoting *Automax*, 720 F.3d at 804). Defendant then points to case law from other jurisdictions, and contends that "[n]o medical procedure is free of potential medical complications" and, therefore, "Ms. Robinson's death was [not] unforeseen or unexpected, because complications occurred while her medical care team was attempting to provide lifesaving

treatment." *Id*. at 16. As support, Defendant relies heavily upon Seventh Circuit jurisprudence, applying federal common law in ERISA cases and, in particular, *Senkier v. Hartford Life & Acc. Ins. Co.*, 948 F.2d 1050, 1051 (7th Cir. 1991) (where insured died from detached catheter that punctured her heart, death was not an accident for purposes of accident insurance, but an injury resulting from medical treatment); *see also Sellers v. Zurich Am. Ins. Co.*, 627 F.3d 627, 633 (7th Cir. 2010) ("[A] policy of accident insurance does not reach . . . injuries resulting from medical treatment.").

Plaintiff also cites to *Cranfill* but argues that Ms. Robinson's death was the result of "medical malpractice" and that from the viewpoint of the "reasonable person" it was not foreseeable that Ms. Robinson would die from "an extremely negligently placed tube into her nose." Pl.'s Resp. at 12. Like Defendant, Plaintiff points to case law from other jurisdictions and argues that "medical malpractice is an accident." *Id*. at 12-13. Of the cases relied upon by Plaintiff, he argues that *Barnes v. Am. Intern. Life Assur. Co.*, 681 F. Supp.2d 513 (S.D. N.Y. 2010) is "the closest fact pattern to the case at bar." Pl.'s Mot. at 13.

*Barnes*, like cases relied upon by Defendant, was an ERISA case and the court applied federal common law and/or New York law, declining to decide a choice of law dispute because no conflict existed between the two. *Barnes*, 681 F. Supp.2d at 519. The court noted that "[i]n cases involving a death in connection with medical or surgical treatment, *there is no hard and fast rule*, as some courts have held that the death was accidental, while other courts have held that the death was not accidental." *Id*. at 523 (emphasis added, citing cases). The court held that the policy was ambiguous because it

8

did not define the term accident. *Id*. at 524. But, "giving the word 'accident' its ordinary, everyday meaning," the court concluded, as a matter of law, that the insured's death "was the result of an accident and not sickness or disease." *Id*. at 525. As the Court explained:

> [Ms. Barnes] did not die of scoliosis. She did not die from the elective surgery to correct back pain. She did not die because of the extensive bleeding usually associated with surgery of this sort. She was not suffering from life-threatening sickness or disease. Rather, she died as the result of the 'misplacement' of a catheter into her chest by the anesthesiologist, which resulted in the rupturing of a vein and the tip of the catheter being left outside the 'lumens.' As a consequence, fluids profused into the chest cavity. There was massive bleeding and the chest and abdomen filled with blood and fluids that should not have been there. Ultimately, Ms. Barnes went into cardiopulmonary arrest, dying two days later.

*Id*. Based on these facts, the court held that: "[o]bjectively and subjectively, this was an unintended, unexpected, unusual, unforeseen, and unfortunate – indeed, tragic – event." *Id*. It was sudden, catastrophic, extraordinary, and disastrous. *Id*.

In reply, Defendant highly contests that Plaintiff has produced any evidence that Ms. Robinson's death resulted from "medical malpractice." Otherwise, Defendant's reply primarily focuses not on the issue of coverage, but instead, on the Certificate's exclusion of coverage for any complication resulting from medical treatment or surgery. Defendant distinguishes *Barnes* on the basis that no such exclusion of coverage was at play. Def.'s Reply at 5.

The Court finds the cases relied upon by the parties are not particularly helpful as to the issue of coverage. Fundamentally, in *Cranfill*, the Oklahoma Supreme Court expressly declined to "adopt the federal rationale that is used to resolve insurance

9

disputes that are governed by ERISA" and cited two reasons as support. As the court explained:

> First, federal courts are entirely free to choose the meaning that is to be given to the critical terms in contest (i.e., the word accident and the phrase 'intentionally self-inflicted injury'). *We, in contrast, are bound by Oklahoma's common-law jurisprudence.* Second, in most ERISA cases, the federal courts must affirm the denial of benefits unless the decision to deny benefits was arbitrary and capricious. We are not persuaded by the federal scheme. Instead, we are persuaded by the reasoning of other state courts which have overwhelmingly held that an insured's death, in circumstances similar to the circumstances of this case, is accidental and is not intentionally self-inflicted.

*Id*. at 707-08 (emphasis added).

Moreover, as to Defendant's reliance upon the Seventh Circuit's decision in *Senkier*, the Tenth Circuit, applying Oklahoma law, has expressly noted that "the reasoning in *Senkier* does not accord with [Oklahoma Supreme Court decisions] to permit recovery for losses incurred in the course of medical treatment." *Flores v. Monumental Life Ins. Co.*, 620 F.3d 1248, 1253 (10th Cir. 2010) (citing *Cooper v. New York Life Ins. Co.*, 180 P.2d 654 (1947); *Bosley v. Prudential Ins. Co. of Am.*, 135 P.2d 479 (1943)).

Turning to the facts of this case, the only evidence in the summary judgment record as to the cause of Ms. Robinson's death is the death certificate.[5] The death certificate identifies the immediate cause of death as respiratory failure. In opposing summary judgment, Plaintiff does not dispute that Ms. Robinson's death was caused by "respiratory failure" but asserts that such respiratory failure was "due to the excessive

---

[5] Neither party has provided any expert testimony as to this issue. Although Plaintiff purports to rely on the expert opinion of Seth Womack, M.D., as discussed infra, Plaintiff has not provided the Court with such opinion.

10

bleeding in her air way caused by the negligent placement of the Dobhoff feeding tube down her nostril." Pl.'s Mot at 5, Section II(B), ¶ 16. Absent from the summary judgment record, however, is evidence of the causal connection between the alleged negligent placement of the tube in Ms. Robinson's nostril and her death.[6]

The Court further agrees with Defendant that Plaintiff has not established, for purposes of this action, that Ms. Robinson's death was the result of "medical malpractice."[7] In any event, whether Ms. Robinson's death was the result of medical malpractice is not, per se, determinative. *See, e.g., Barnes*, 681 F. Supp.2d at 525

---

[6] Plaintiff makes reference to the "Expert opinion by Dr. Seth Womack" as evidentiary support. However, Plaintiff fails to attach any expert opinion of Dr. Womack. Instead, the referenced exhibit is an excerpt of a "supplemental response" provided by Plaintiff to Defendant that states only that: "It is expected that Seth P. Womack, M.D. will testify that the care provided to Peggy Robinson by the doctors and staff and the Stillwater Medical Center, including the care provided by Dr. Williams and Dr. Mueller, fell below the standard of care and caused Peggy Robinson's death." *See* Doc. No. 57-2. The supplemental response is not the expert's opinion and is otherwise insufficient to establish causation.

[7] To this end, the Court finds disingenuous and improper Plaintiff's insistence that the Court take "judicial notice" of the alleged medical malpractice based on a settlement reached in a lawsuit brought by Ms. Robinson's estate against the hospital. *See* Pl.'s Resp. at 9-10 ("Plaintiff respectfully asks the Court to take judicial notice of the commonly known fact to both Courts and attorneys that absolutely no defendant in a medical malpractice case or any other personal injury case agrees to settle a case without including boilerplate language that absolves liability. In reality, that language has absolutely nothing to do with whether the defendant was negligent. The real proof of the defendant's negligence or medical malpractice is the fact that they agreed to settle. That act is the true admission of liability."). Plaintiff misapprehends Rule 201 of the Federal Rules of Evidence and the function of judicial notice which is limited to facts "generally known within the trial court's territorial jurisdiction; or which "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201. Here, Plaintiff offers not facts, but his opinion (and, by affidavit, the opinion of another attorney – *see* Aff. [Doc. No. 57-6]) as to the effect of a settlement. The Court cannot take judicial notice of such opinions as they satisfy neither prong of Rule 201. Moreover, the agreement governing the referenced settlement expressly provides: "It is understood and agreed to by the Plaintiff that this is a compromise of a doubtful and disputed claim, and the payments are not to be construed as an admission of liability on the part of the Released Parties, by whom *liability is expressly denied*." *See* Settlement [Doc. No. 42-7] (emphasis added).

11

(rejecting notion that "there is a blanket rule that medical malpractice is – or is not – an accident"). Instead, the Court's inquiry is directed to the Certificate language and whether the undisputed factual record establishes that Ms. Robinson's death was accidental as that term is to be interpreted under governing Oklahoma law.

The medical evidence shows that the assessment of Ms. Robinson *upon her admission to the hospital* addressed multiple conditions to include the following: bilateral pneumonia; possible aspiration at home from nausea and vomiting; possible sepsis from an aspiration pneumonia; and some severe renal insufficiency due to dehydration, infection and hypotension. The attending physician noted that he "informed [family members] of the severe nature of the medical problem and especially the poor prognosis for aspiration pneumonia" and that Ms. Robinson was a "resuscitation patient." *See* Medical Records [Doc. No. 42-2] at 6. And Ms. Robinson's "final principal diagnoses" included: (1) acidosis; (2) acute kidney failure; (3) acute respiratory failure with hypoxemia; (4) anemia; (5) atherosclerotic heart disease of native coronary artery without angina pectoris; (6) dehydration; (7) essential primary hypertension; (8) pneumonitis due to inhalation of food or vomitus; (9) sepsis; (10) severe sepsis with septic shock; and (11) adult respiratory distress syndrome due to the aspiration pneumonia. *Id*. at 2.

Defendant does not ever expressly identify the "accident" at issue. But Plaintiff clearly contends the accident was the allegedly negligent placement of the tube in Ms. Robinson's nose.

The record fails to demonstrate that Ms. Robinson's death arose directly from the placement of the tube in her nose and was not attributable to any other causes. Instead, as

12

set forth above, at the time of her admission, Ms. Robinson suffered from multiple conditions that appear to have contributed to her death. Assuming, without deciding, both that the placement of the feeding tube was an accidental injury and the feeding tube was *one* cause of death, coverage is nonetheless precluded. As set forth, for coverage to exist, the Certificate requires not only that the injury be caused "directly by an accident" but further "that it be caused independently of all other causes." Here, the record fails to demonstrate that Ms. Robinson's death was caused by the placement of the feeding tube, independent of all other cause. *See Morrison v. Stonebridge Life Ins. Co.*, No. 11-1204-D, 2015 WL 137261 at *6 (W.D. Okla. Jan. 9, 2015) ("[R]elying on Oklahoma case law, the Tenth Circuit has distilled a general rule that is applicable here: if 'death resulted because the accident aggravated the effects of the disease, or the disease aggravated the effects of the accident, with both the disease and the accident acting in concurring causes of death,' there is no coverage under a policy that provides benefits for a death that occurs as a direct result of an injury caused by an accident, independent of all other causes." (quoting *Flores*, 620 F.3d at 1252 (internal quotation omitted)). Accordingly, coverage does not exist under the Certificate.

### 2. Exclusion of Coverage for Complication Resulting from Medical Treatment or Surgery

The Court further finds, for the reasons that follow, that the exclusion of coverage for any complication resulting from medical treatment or surgery applies. Thus, even if Ms. Robinson's death was a covered injury, the Court finds no benefits are payable under the Certificate.

Defendant cites persuasive law from other jurisdictions upholding the exclusion, even where allegations of medical malpractice are at issue.[8]  For example, in *Whetsell v. Mut. Life Ins. Co. of New York*, 669 F.2d 955 (4th Cir. 1982), Kenneth Whetsell, the deceased, was admitted to the hospital for cataract surgery.  While recovering from the surgery a saline solution was intravenously administered to Mr. Whetsell.  An infected I.V. needle was used and Mr. Whetsell contracted bacterial endocarditis which resulted in his death.

Mr. Whetsell had life insurance policies which covered accidental death, but which excluded death "caused or contributed to, directly or indirectly . . . by treatment or operation for disease or bodily or mental infirmity . . . ."  *Id*. at 956.  The insurer argued that Mr. Whetsell's death was caused or contributed to by medical treatment and, therefore, was excluded from accidental death coverage.  The court concluded that the exclusion excluded from coverage "medical mistreatment."  *Id*.  As the court reasoned, to come to a different conclusion would render the exclusionary provision meaningless as "[d]eath is never caused by medical treatment absent some misdiagnosis or mistake."  *Id*. at 957.  The court reached this conclusion based on the "abundance of authority" supporting such a result "and the illogic of the contrary construction" which convinced the court that the clause was "susceptible to but one interpretation."  *Id*. and n.1; *see also Lebron v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn*., 849 F. App'x 484, 488 (5th Cir. 2021) ("Cases in which . . . the insured is injured by a doctor's malpractice . . . uniformly

---

[8] In addressing the exclusion, the parties point to no Oklahoma law and the Court has not found any Oklahoma case directly addressing the exclusion at issue.

conclude that the mishaps are caused by medical treatment and, therefore, are excluded from coverage."); *Corum v. Hartford Life & Accident Ins. Co.*, 553 F. Supp.2d 800 (E.D. Ky. 2008) (noting the "substantial body of law" holding that the exclusion for medical or surgical treatment applies even where medical malpractice is alleged); *Miller v. The Hartford Life Ins. Co.*, 348 F.Supp.2d 815, (E.D. Mich. 2004) (collecting cases finding that medical malpractice is within the meaning of "medical or surgical treatment" exclusion from coverage).[9]

Plaintiff points to no law to support his position that the exclusion does not apply.[10] But Plaintiff argues the exclusion is ambiguous because the Certificate does not define "complication" or "medical treatment." Pl.'s Resp. at 15. According to Plaintiff, "an average person would differentiate between 'medical treatment' and 'medical malpractice.'" *Id*. at 15-16.[11]

The Court rejects Plaintiff's argument that the terms "complication" and "medical treatment" are ambiguous solely because those terms are not defined in the Policy. "The absence of an express definition of a word within the policy does not necessarily render

---

[9] The Court acknowledges that *Lebron*, *Corum* and *Miller* are ERISA cases. The Court cites those cases as persuasive in light of the lack of any Oklahoma authority directly addressing the issue and the courts' reliance in those cases on the "substantial body of law" – not limited to ERISA cases – holding the exclusion applies even where medical malpractice is at issue.

[10] The Court notes that in *Barnes*, the principal case relied upon by Plaintiff, the court pointed to the absence of any exclusion "for losses resulting from medical or surgical treatment" as significant to the Court's determination that the death in that case was accidental. *Barnes*, 681 F.Supp.2d at 524. And the court recognized that "[i]f an insurance company wants to carve losses from medical and surgical treatment out of the definition of an 'accident,' it can do so with an exclusion[.] *Id*. at 526.

[11] As discussed supra, Plaintiff submits no admissible evidence of medical malpractice.

15

the word ambiguous." *Cranfill*, 49 P.3d at 706. Nor does the fact that "a word cannot be precisely defined to make clear its application in every factual situation" render the word ambiguous. *Id*. Instead, the focus of the inquiry is on "whether the word is susceptible to two interpretations on its face." *Id*. (citation omitted). Plaintiff fails to show that either the word "complication" or "medical treatment" is susceptible to two interpretations.[12]

The Court finds the rationale set forth in the cited cases constitutes the prevailing view and is a proper interpretation of the exclusion. And further, Plaintiff fails to point to contrary authority. Therefore, the Court concludes the exclusion from coverage applies.

In sum, the Court finds that Ms. Robinson's death was not a covered injury under the terms of the Certificate. But even assuming Ms. Robinson's death were a covered injury, the Certificate's exclusion for any complication resulting from medical treatment or surgery applies. Accordingly, Defendant is entitled to judgment as a matter of law in its favor on Plaintiff's breach of contract claim.

---

[12] As to the latter term, the Court finds persuasive the Fifth Circuit's rationale in support of its finding that the term is unambiguous:

> The term "medical treatment" is unambiguous and has a generally accepted meaning, which we are bound to apply. [citation omitted]. Webster's Third New International Dictionary defines "medical treatment" as "the action or manner of treating a patient medically or surgically," and to "treat" is "to care for (as a patient or part of the body) medically." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2435 (3d ed. 2002). The word "treatment" thus is a "broad term covering all the steps taken to affect a cure of an injury or disease; including examination and diagnosis as well as application of remedies." BLACK'S LAW DICTIONARY 1502 (6th ed. 1990).

*Lebron*, 849 F. App'x at 487 (5th Cir. 2021).

### B. Breach of the Duty of Good Faith and Fair Dealing

Defendant further moves for summary judgment as to Plaintiff's claim for breach of the duty of good faith and fair dealing. Specifically, Defendant argues that it acted reasonably and in good faith, and the facts establish that a legitimate dispute existed regarding coverage under the Certificate." Def.'s Mot. at 19.

Under Oklahoma law, "[a]n insurer has an implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received." *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) (quotations omitted). However, a plaintiff seeking damages for the insurer's alleged bad faith conduct must prove insurance coverage for its claim. *See id*. at 1093-94 (finding district court did not erroneously dismiss plaintiff's bad faith claim where plaintiff failed to show entitlement to insurance coverage); *see also Edens v. The Netherlands Ins. Co.*, 834 F.3d 1116, 1129 (10th Cir. 2016) ("Under Oklahoma law, an insured must show that he is entitled to coverage to prevail on a bad-faith claim."); *MJH Properties LLC v. Westchester Surplus Lines Ins. Co.*, 814 F. App'x 421, 425 (10th Cir. 2020) (finding no breach of the duty to act in good where total pollution exclusion provision precluded coverage under the policy as coverage is necessary to prevail on such a claim).

Because the Court has determined, as a matter of law, that coverage does not exist under the Certificate, the Court need not address Defendant's summary judgment evidence on the issue of its alleged bad-faith conduct. *See* supra n. 4. Plaintiff's claim for breach of the duty of good faith and fair dealing fails as a matter of law.

## V. Conclusion

For the reasons set forth, Defendant CMFG Life Insurance Company's Motion for Summary Judgment and Brief in Support [Doc. No. 42] is GRANTED and Defendant is entitled to judgment as a matter of law in its favor as to Plaintiff's claims for breach of contract and breach of the duty of good faith and fair dealing. A separate judgment shall be entered contemporaneously with this Order.[13]

IT IS SO ORDERED this 13th day of January, 2023.

_____
SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

---

[13] In light of the Court's summary judgment ruling, the following pending Motions [Doc. Nos. 34, 40, and 41] are DENIED as MOOT.